UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

De Hui Mu, Jun Ying Ma, Yan Nan Ma, Di Jemy Suen,
Xing Wang, Individually And on behalf of All Other
Employees Similarly Situated,

                                Plaintiffs,

                 - against -

Han Dynasty NYU Corp., d/b/a Han Dynasty, Han
Dynasty Upper West Side Corp., d/b/a Han Dynasty, June
Kwan, Han Ming Chiang, Helen M Kwan, and Mark Allan

                                Defendants.

Case No.

**COLLECTIVE & CLASS
ACTION COMPLAINT**

---

       Plaintiffs De Hui Mu, Jun Ying Ma, Yan Nan Ma, Di Jemy Suen, and Xing Wang (collectively " Plaintiffs") on their own behalf and on behalf of all others similarly situated, by and through their undersigned attorneys, Hang & Associates, PLLC, hereby file this complaint against the Defendants Han Dynasty NYU Corp., d/b/a Han Dynasty, Han Dynasty Upper West Side Corp., d/b/a Han Dynasty ("Corporate Defendant"), June Kwan, Han Ming Chiang, Helen M Kwan, and Mark Allan  (collectively "Defendants"), allege and show the Court the following:

## **INTRODUCTION**

      1.     This is an action brought by Plaintiffs on their own behalf and on behalf of similarly situated employees, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and the New York Labor Law, arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

      2.     Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of

failing to pay their employees, including Plaintiffs, compensation for all hours worked, minimum wage, and overtime compensation for all hours worked over forty (40) each workweek.

3.     Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid minimum wages, (2) unpaid overtime wages, (3) liquidated damages, (4) prejudgment and post-judgment interest; and (5) attorneys' fees and costs.

4.     Plaintiffs further alleges pursuant to New York Labor Law § 650 et seq. and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") that they are entitled to recover from the Defendants: (1) minimum wages, (2) unpaid overtime compensation, (3) unpaid "spread of hours" premium for each day they worked ten (10) or more hours, (4) compensation for failure to provide wage notice at the time of hiring and failure to provide paystubs in violation of the NYLL (5) unlawful gratuities deductions (6) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime pursuant to the NY Wage Theft Prevention Act; (7) civil damages for Deceptive Acts and Practices — violations of New York General Business Law §349; (8) prejudgment and post-judgment interest; and (9) attorney's fees and costs.

## JURISDICTION AND VENUE

5.     This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

6.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

7.      Plaintiff Di Jemy Suen is an individual residing in Queens, New York and has been employed by Defendants at their restaurant business located at 90 Third Ave., New York, New York 10003 ("3rd Ave Location") as a busser/server from approximately March 2015 to present.

8.      Plaintiff De Hui Mu, is an individual residing in Queens, New York and has been employed by Defendants at their restaurant business located at 90 Third Ave., New York, New York 10003 as a busser from approximately February 2017 to present.

9.      Plaintiff Jun Ying Ma is an individual residing in Queens, New York and has been employed by Defendants at their restaurant businesses located at 90 Third Ave., New York, New York 10003, as a waiter from approximately August 2013 to present. During the week of June 5, 2016, Plaintiff Jun Ying Ma worked simultaneously at two of Defendants' restaurants, the other restaurant located at 2350 Broadway a/k/a 215 W 85th St., New York, NY 10024 ("Broadway Location").

10.      Plaintiff Yan Nan Ma is an individual residing in Queens, New York and has been employed by Defendants at their restaurant businesses located at 90 Third Ave., New York, New York 10003, as a waiter and shift-leader from approximately September 2013 to present.

11.      Plaintiff Xing Wang is an individual residing in Queens, New York and had been employed by Defendants at their restaurant business located at 90 Third Ave., New York, New York 10003 as a runner from approximately November 2016 to July 15, 2017.

## DEFENDANTS

12.      Upon information and belief, Defendant, Han Dynasty NYU Corp. d/b/a Han Dynasty owns and operates a restaurant in Manhattan located at 90 Third Avenue, New York, New York 10003.

13.     Upon information and belief, Defendant, Han Dynasty NYU Corp. d/b/a Han Dynasty had gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

14.     Upon information and belief, Han Dynasty NYU Corp. purchased and handled goods moved in interstate commerce.

15.     Upon information and belief, Defendant June Kwan is the owner, officer, director and/or managing agent of Han Dynasty NYU Corp. d/b/a Han Dynasty at 90 Third Ave., New York, New York 10003 and participated in the day-to-day operations of Han Dynasty and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Han Dynasty NYU Corp. (See Exhibit 2).

16.     Upon information and belief, Defendant June Kwan owns the stock of Han Dynasty NYU Corp. and manages and makes all business decisions including but not limited to the amount in salary the employees will receive and the number of hours employees will work.

17.     Upon information and belief, Defendant Han Ming Chiang is the owner, officer, director and/or managing agent of NYU Corp. d/b/a Han Dynasty at 90 Third Ave., New York, New York 10003 and participated in the day-to-day operations of Han Dynasty and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Han Dynasty NYU Corp. (See Exhibit 2).

18.     Upon information and belief, Defendant Han Ming Chiang owns the stock of Han Dynasty NYU Corp. and manages and makes all business decisions including but not limited to the amount in salary the employee will receive and the number of hours employees will work.

19.    Upon information and belief, Defendant Helen M Kwan is the owner, officer, director and/or managing agent of NYU Corp. d/b/a Han Dynasty at 90 Third Ave., New York, New York 10003 and participated in the day-to-day operations of Han Dynasty and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Han Dynasty NYU Corp. (See Exhibit 2).

20.    Upon information and belief, Defendant Helen M Kwan owns the stock of Han Dynasty NYU Corp. and manages and makes all business decisions including but not limited to the amount in salary the employee will receive and the number of hours employees will work.

21.    Upon information and belief, Defendant, Han Dynasty Upper West Side Corp. d/b/a Han Dynasty owns and operates a restaurant in Manhattan located at 2350 Broadway a/k/a 215 West 85th Street, New York, NY 10024.

22.    Upon information and belief, Defendant, Han Dynasty Upper West Side Corp. d/b/a Han Dynasty had gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

23.    Upon information and belief, Han Dynasty Upper West Side Corp. purchased and handled goods moved in interstate commerce.

24.    Upon information and belief, Defendant June Kwan is the owner, officer, director and/or managing agent of Han Dynasty Upper West Side Corp. d/b/a Han Dynasty located at 2350 Broadway a/k/a 215 West 85th Street, New York, NY 10024 and participated in the day-to-day operations of Han Dynasty and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Han Dynasty Upper West Side Corp. (See Exhibit 2).

25.    Upon information and belief, Defendant June Kwan owns the stock of Han Dynasty Upper West Side Corp.  and manages and makes all business decisions including but not limited to the amount in salary the employees will receive and the number of hours employees will work.

26.    Upon information and belief, Defendant Han Ming Chiang is the owner, officer, director and/or  managing  agent  of Han Dynasty Upper West Side Corp. d/b/a Han Dynasty located at 2350 Broadway a/k/a 215 West 85th Street, New York, NY 10024  and  participated  in the  day-to-day  operations  of  Han Dynasty and  acted  intentionally  and  maliciously  and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL  §2  and  the  regulations  thereunder,  and  is jointly  and  severally  liable  with Han Dynasty Upper West Side Corp. (See Exhibit 2).

27.    Upon information and belief, Defendant Han Ming Chiang owns the stock of Han Dynasty Upper West Side Corp. and manages and makes all business decisions including but not limited to the amount in salary the employee will receive and the number of hours employees will work.

28.    Upon information and belief, Defendant Han Helen M Kwan is the owner, officer, director and/or  managing  agent  of Han Dynasty Upper West Side Corp. d/b/a Han Dynasty located at 2350 Broadway a/k/a 215 West 85th Street, New York, NY 10024  and  participated  in the  day-to-day  operations  of  Han Dynasty and  acted  intentionally  and  maliciously  and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL  §2  and  the  regulations  thereunder,  and  is jointly  and  severally  liable  with Han Dynasty Upper West Side Corp. (See Exhibit 2).

29.    Upon information and belief, Defendant Helen M Kwan owns the stock of Han Dynasty Upper West Side Corp. and manages and makes all business decisions including but not

limited to the amount in salary the employee will receive and the number of hours employees will work.

30.     Upon information and belief, Defendant Mark Allen is the owner, officer, director and/or managing agent of Han Dynasty Upper West Side Corp. d/b/a Han Dynasty located at 2350 Broadway a/k/a 215 West 85th Street, New York, NY 10024 and participated in the day-to-day operations of Han Dynasty and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Han Dynasty Upper West Side Corp. (See Exhibit 2).

31.     Upon information and belief, Defendant Mark Allen owns the stock of Han Dynasty Upper West Side Corp. and manages and makes all business decisions including but not limited to the amount in salary the employee will receive and the number of hours employees will work.

32.     At all times relevant herein, Han Dynasty NYU Corp. was, and continues to be, an "enterprise engaged in commerce" within the meaning of FLSA.

33.     At all times relevant herein, Han Dynasty Upper West Side Corp. was, and continues to be, an "enterprise engaged in commerce" within the meaning of FLSA.

34.     At all relevant times, the work performed by Plaintiffs were directly essential to the business operated by Han Dynasty NYU Corp.

35.     At all relevant times, the work performed by Plaintiffs were directly essential to the business operated by Han Dynasty Upper West Side Corp.

36.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned minimum wages, overtime compensation and spread-of-hour premiums, and failed to provide them a wage notice at the time of hiring in violation of the NYLL.

37.     Plaintiffs have fulfilled all conditions precedent to the institution of this action and/ or conditions have been waived.

## STATEMENT OF FACTS

38.     Defendants committed the following alleged acts knowingly, intentionally and willfully.

39.     Defendants knew that the nonpayment of minimum wage, overtime pay, spread of hours pay, and failure to provide the required wage notice at the time of hiring would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

### *Plaintiff Di Jemy Suen*

40.     From approximately March 2015 to present, Defendants hired Plaintiff Di Jemy Suen to work for Defendants' restaurant located at 90 3rd Ave., New York, NY 10003.

41.     Plaintiff Di Jemy Suen was originally hired as a busser and was later promoted to the position of waiter in November 2015.

42.     Plaintiff Di Jemy Suen was not provided a written wage notice, in English and in Chinese (the primary language identified by Plaintiff Di Jemy Suen) when he was hired, including but not limited to information about his rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

43.     Defendants did not inform Plaintiff Di Jemy Suen in advance of their use of tip credit according to Section 203 of the Fair Labor Standards Act.

44.     From March 2015 to April 2017, Plaintiff Di Jemy Suen worked four full-day shifts per week; from April 2017 to present, Plaintiff Di Jemy Suen works three full-day shifts and a half day shift per week. His exact work schedule varies from week to week.

45.     During all relevant times, Plaintiff Di Jemy Suen works the following schedule: on each full-day shift, Plaintiff Di Jemy Suen would work from 12:00 pm to 11:30 pm. If he is scheduled to work on the weekends, Plaintiff Di Jemy Suen would work from 12:00 pm to midnight.  He is allowed a one-and-half (1.5) hours break in winter and a two-hour (2) break during the rest of the year.  When he works a half day shift, Plaintiff Di Jemy Suen would work from 4:00pm to 11:30pm, and the shift would occasionally last until about 2:00 am.

46.     Therefore, Plaintiff Di Jemy Suen's weekly working hours could range from 38 to 42 hours during the period from March 2015 to April 2017; and from 36 to 39 hours during the period from April 2017 to present.

47.     The pay stub issued by Defendants state that Plaintiff Di Jemy Suen was paid $5.65 per hour for work hours under 40 hours per week and was paid $8.48 for hours above 40 hours per week, from March 2015 to November 26, 2015.   Plaintiff Di Jemy Suen was paid $6.65 per hour for work hours under 40 hours per week and was paid $9.98 for hours above 40 hours per week, from November 27, 2015 to January 4, 2016.   Plaintiff Di Jemy Suen was paid $7.50 per hour for work hours under 40 hours per week and was paid $11.25 for hours above 40 hours per week, from January 5, 2016 to the present.

48.      Plaintiff Di Jemy Suen was not required to record his work hours such as punch time cards and was not paid for all hours worked per week.

49.     During all relevant times, Plaintiff Di Jemy Suen regularly spend more than two hours on each workday doing side works such as picking up trash, cleaning, cutting string beans, and making dumplings.

50.     Plaintiff Di Jemy Suen was required to participate in a tip pooling scheme designed by Defendants that includes both tipped and nontipped employees such as kitchen staff. Plaintiff

Di Jemy Suen identify two such kitchen staff as "Jane" (first name unknown) Xian and "John" (first name unknown) Guo.

51.     The size of the tip pool is as follows: daily credit card tips ranging from $1,100 to $1,200 on Fridays and Saturdays, from $700 to $800 rest of the week; daily cash tips ranging from $150 to 170 on Fridays and Saturdays, $70 to $80 rest of the week.

52.     During all relevant times, Defendants collected one half of all the cash tips from the servers' pool and distributed it to other employees, including nontipped employees.

53.     Upon information and belief, Defendants deducted meal credits against Plaintiff Di Jemy Suen's wages in an amount exceeding the maximum value allowed under New York Hospitality Industry Wage Order. 12 NYCRR §146-19.

54.     Defendants did not provide Plaintiff Di Jemy Suen with a correct pay stub with every payment of wages.

### Plaintiff De Hui Ma

55.     From approximately February 2017 to present, Defendants hired Plaintiff De Hui Ma to work as a busser for Defendants' restaurant located at 90 3rd Ave., New York, NY 10003.

56.     Plaintiff De Hui Ma was not provided a written wage notice, in English and in Chinese (the primary language identified by Plaintiff De Hui Ma) when he was hired, including but not limited to information about his rate of pay and basis thereof, allowances claimed by Defendants, and the regular pay day designated by Defendants.

57.     During the period, Plaintiff De Hui Ma worked 3 full-day shifts during about 30% of all his workweeks; and he worked 3 full-day and one half-day shifts during about 40% of his workweeks. During about 30% of his workweeks, Plaintiff De Hui Ma worked 4 full-day shifts or 4 full-day and one half-day shifts per workweek.

58.    During all relevant times, Plaintiff De Hui Ma works the following schedule:  on each full-day shift, Plaintiff De Hui Ma would work from 12:00 pm to 11:30 pm, with a two-hour break.  When he works a half day shift, Plaintiff De Hui Ma would work from 4:00pm to 11:30pm, and the shift would occasionally last until midnight.

59.    Therefore, Plaintiff De Hui Ma works 28.5 to 46 hours per week.

60.    During all relevant times, Plaintiff De Hui Ma regularly spend more than two hours on each workday doing side works such as cleaning, handling pickup orders, and answering the phone.

61.    Plaintiff De Hui Ma was paid $7.50 per hour for work hours under 40 hours per week and was paid $11.25 for hours above 40 hours per week during his employment period.

62.    Plaintiff De Hui Ma was not paid for all hours worked per week.

63.    Plaintiff De Hui Ma was required to participate in a tip pooling scheme designed by Defendants that includes both tipped and nontipped employees such as kitchen staff. Plaintiff De Hui Ma identify two such kitchen staff as "Jane" (first name unknown) Xian and "John" (first name unknown) Guo.

64.    The size of the tip pool is as follows: daily credit card tips ranging from $1,100 to $1,200 on Fridays and Saturdays, from $700 to $800 rest of the week; daily cash tips ranging from $150 to 170 on Fridays and Saturdays, $70 to $80 rest of the week.

65.    During all relevant times, Defendants collected one half of all the cash tips from the servers' pool and distributed it to other employees, including non-tipped employees.

66.    Upon information and belief, Defendants deducted meal credits against Plaintiff De Hui Ma's wages in an amount exceeding the maximum value allowed under New York Hospitality Industry Wage Order. 12 NYCRR §146-19.

67.    Defendants did not provide Plaintiff De Hui Ma with a correct pay stub with every payment of wages.

68.    Defendants did not inform Plaintiff De Hui Ma in advance of their use of tip credit according to Section 203 of the Fair Labor Standards Act.

### *Plaintiff Jun Ying Ma*

69.    From approximately August 2013 to present, Defendants hired Plaintiff Jun Ying Ma to work as a waiter for Defendants' restaurant located at 90 3rd Ave., New York, NY 10003.

70.    During the week of June 5 2015, Plaintiff Jun Ying Ma worked at Defendants' restaurant located at 2350 Broadway a/k/a 215 West 85th Street, New York, NY 10024 in addition to working simultaneously at Defendants' restaurant at the 3rd Ave Location. As a result, Plaintiff Jun Ying Ma worked 5 full-day and one half-day shifts at both of Defendants' restaurants.

71.    During the period from September 2, 2013 to February 2014, Plaintiff Jun Ying Ma worked five full-day and one half-day shifts per week with only Thursday off. On Monday through Wednesday, Plaintiff Jun Ying Ma work full-day shifts when he would work from 11:00 am to 11:30 pm; on Saturday and Sunday, Plaintiff Jun Ying Ma works full-day shifts when he would work from 11:00 am to either 11:30 pm or midnight; on Friday, Plaintiff Jun Ying Ma work a half-day shift when he would work from 4:00 pm to 12:00 pm. Plaintiff Jun Ying Ma did not have any break time during each shift in this period. Therefore, Plaintiff Jun Ying Ma worked approximately 71 hours during this period.

72.    During the period from February 2014 to March 2015, Plaintiff Jun Ying Ma worked either four full-day shifts or four full-day and one half-day shifts per workweek. During the period from April 2015 to November 2016, Plaintiff Jun Ying Ma worked either four full-day shifts or three full-day and one half-day shifts. During these two periods, Plaintiff Jun Ying Ma

worked the following schedule: if his full-day shifts fall on any week days from Monday through Friday, Plaintiff Jun Ying Ma would work from 12:00 pm to midnight with one two-hour break each day; if his full-day shifts fall on Saturday or Sunday, Plaintiff Jun Ying Ma would work from 12:00 pm to midnight without break; Plaintiff Jun Ying Ma would work from 4:00 pm to midnight during half-day shifts. Therefore, Plaintiff Jun Ying Ma's work hours during these two periods could range from 38 to 52 hours per week.

73.    During the period from December 2016 to present, Plaintiff Jun Ying Ma works three full-day shifts per workweek. He would work from 12:00 pm to midnight with one two-hour break each day. During this period, Plaintiff Jun Ying Ma works about 30 hours per week.

74.    Plaintiff Jun Ying Ma was not required to record his work hours such as punch time cards.

75.    Plaintiff Jun Ying Ma was required to write down time records that do not reflect truthfully his hours worked.

76.    Defendants did not inform Plaintiff Jun Ying Ma in advance of their use of tip credit according to Section 203 of the Fair Labor Standards Act.

77.    Plaintiff Jun Ying Ma was required to participate in a tip pooling scheme designed by Defendants that includes both tipped and nontipped employees such as kitchen staff. Plaintiff De Hui Ma identify two such kitchen staff as "Jane" (first name unknown) Xian and "John" (first name unknown) Guo.

78.    The size of the tip pool is as follows: daily credit card tips ranging from $1,100 to $1,200 on Fridays and Saturdays, from $700 to $800 rest of the week; daily cash tips ranging from $150 to 170 on Fridays and Saturdays, $70 to $80 rest of the week.

79.    During all relevant times, Defendants collected one half of all the cash tips from the servers' pool and distributed it to other employees, including nontipped employees.

80.    Plaintiff Jun Ying Ma identifies Defendant June Kwan as manager in charge of calculating the cash tips to be distributed.

81.    Plaintiff Jun Ying Ma states that Defendants does not disclose know how credit card tips are accounted for or distributed.

82.    Upon information and believe, the pay stub issued by Defendants state that Plaintiff Jun Ying Ma was paid a regular rate of $800 to $1,000 for every two weeks from August 2013 to June 16, 2015.  He was paid $6.00 per hour for work hours under 40 hours per week and was paid $9.00 for hours above 40 hours per week, from June 17, 2015 to November 26, 2015.   Plaintiff was paid $7.00 per hour for work hours under 40 hours per week and was paid $10.50 for hours above 40 hours per week, from November 27, 2015 to January 4, 2016.   Plaintiff was paid $8.00 per hour for work hours under 40 hours per week and was paid $12.00 for hours above 40 hours per week, from January 5, 2016 to the present.

83.     Plaintiff Jun Ying Ma was not paid for all hours worked per week.

84.    Upon information and belief, Defendants deducted meal credits against Plaintiff Jun Ying Ma's wages in an amount exceeding the maximum value allowed under New York Hospitality Industry Wage Order. 12 NYCRR §146-19.

85.    Defendants did not provide Plaintiff Jun Ying Ma with a correct pay stub with every payment of wages.

***Plaintiff Yan Nan Ma***

86.    From September 2013 to present, Plaintiff Yan Nan Ma was hired by Defendants to work as a shift leader/waiter for Defendants' restaurant located at 90 3rd Ave., New York, NY 10003.

87.    Plaintiff Yan Nan Ma was not provided a written wage notice, in English and in Chinese (the primary language of Plaintiff Yan Nan Ma) when he was hired, including but not limited to information about his rate of pay and basis thereof, tip allowances claimed by Defendants, and the regular pay day designated by Defendants.

88.    During this period from September 2013 to February 2014, Plaintiff Yan Nan Ma worked a similar schedule as Plaintiff Jun Ying Ma. Therefore, Plaintiff Yan Nan Ma worked approximately 71 hours per week.

89.    During the period from February 2014 to October 2016, Plaintiff Yan Nan Ma worked a similar schedule as Plaintiff Jun Ying Ma. Therefore, Plaintiff Yan Nan Ma's work hours during these two periods could range from 38 to 52 hours per week.

90.    Beginning from November 2016, Plaintiff Yan Nan Ma works either 3 or 4 full-day shifts per week when he would work from 11:00 am to 11:30 pm with a two-hour break. Therefore, Plaintiff Yan Nan Ma works either 28.5 or 38 hours per week.

91.    Plaintiff Yan Nan Ma was not required to record his work hours such as punch time cards.

92.    Plaintiff Yan Nan Ma was required to write down time records that do not reflect truthfully his hours worked.

93.    Defendants did not inform Plaintiff Yan Nan Ma in advance of their use of tip credit according to Section 203 of the Fair Labor Standards Act.

94.     Plaintiff Yan Nan Ma was required to participate in a tip pooling scheme designed by Defendants that includes both tipped and nontipped employees such as kitchen staff.

95.     The size of the tip pool is as follows: daily credit card tips ranging from $1,100 to $1,200 on Fridays and Saturdays, from $700 to $800 rest of the week; daily cash tips ranging from $150 to 170 on Fridays and Saturdays, $70 to $80 rest of the week.

96.     During all relevant times, Defendants collected one half of all the cash tips from the servers' pool and distributed it to other employees, including nontipped employees.

97.     Plaintiff Yan Nan Ma states that Defendants does not disclose know how credit card tips are accounted for or distributed.

98.     Upon information and believe, the pay stub issued by Defendants state that Plaintiff Jun Ying Ma was paid a regular rate of $800 to $1,000 for every two weeks from August 2013 to June 16, 2015.  He was paid $6.00 per hour for work hours under 40 hours per week and was paid $9.00 for hours above 40 hours per week, from June 17, 2015 to November 26, 2015.   Plaintiff was paid $11.00 per hour for work hours under 40 hours per week from December 2015 to January 2017.  Plaintiff was paid $7.25 per hour for work hours under 40 hours per week from February, 2017 to the present.

99.      Plaintiff Yan Nan Ma was not paid for all hours worked per week.

100.     Upon information and belief, Defendants deducted meal credits against Plaintiff Yan Nan Ma's wages in an amount exceeding the maximum value allowed under New York Hospitality Industry Wage Order. 12 NYCRR §146-19.

101.     Defendants did not provide Plaintiff Yan Nan Ma with a correct pay stub with every payment of wages.

***Plaintiff Xing Wang***

102.    Plaintiff Xing Wang was hired by Defendants to work as a runner for Defendants' restaurant located at 90 3rd Ave., New York, NY 10003 from November 2016 to July 15, 2017.

103.    Plaintiff Xing Wang was not provided a written wage notice, in English and in Chinese (the primary language of Plaintiff Xing Wang) when he was hired, including but not limited to information about his rate of pay and basis thereof, tip allowances claimed by Defendants, and the regular pay day designated by Defendants.

104.    Defendants did not inform Plaintiff Xing Wang in advance of their use of tip credit according to Section 203 of the Fair Labor Standards Act.

105.    During this period, Plaintiff Xing Wang worked three full-day shifts or three full-day and one half-day shifts per week. He can have one day or one and half days off from Monday through Thursday; another day off on either Friday or Saturday.  Plaintiff Xing Wang would work from 11:30 am to 10:00 pm on a morning shift and from 12:00 pm to 11:30 pm or midnight on an evening shift. Plaintiff Xing Wang was entitled to a two-hour break each shift in this period.

106.    Therefore, Plaintiff Xing Wang's weekly work hours could range from 28 to 36 hours per week.

107.    During all relevant times, Plaintiff Xing Wang regularly spend more than two hours on each workday doing side works such as preparing delivery orders, packing sauces and utensils for delivery orders, setting up tables, sweeping the floor, and cleaning the toilet.

108.    Plaintiff Xing Wang was not provided a written wage notice, in English and in Chinese (the primary language identified by Plaintiff Xing Wang) when he was hired, including but not limited to information about his rate of pay and basis thereof, tip allowances claimed by Defendants, and the regular pay day designated by Defendants.

109.    Defendants did not inform Plaintiff Xing Wang in advance of their use of tip credit according to Section 203 of the Fair Labor Standards Act.

110.    Plaintiff Xing Wang was paid $7.50 per hour for work hours under 40 hours per week during his employment period.

111.    Plaintiff Xing Wang was not required to record his work hours such as punch time cards and was not paid for all hours worked per week.

112.    Plaintiff Xing Wang was required to participate in a tip pooling scheme designed by Defendants that includes both tipped and nontipped employees such as kitchen staff.

113.    The size of the tip pool is as follows: daily credit card tips ranging from $1,100 to $1,200 on Fridays and Saturdays, from $700 to $800 rest of the week; daily cash tips ranging from $150 to 170 on Fridays and Saturdays, $70 to $80 rest of the week.

114.    During all relevant times, Defendants collected one half of all the cash tips from the servers' pool and distributed it to other employees, including non-tipped employees.

115.    Upon information and belief, Defendants deducted meal credits against Plaintiff Xing Wang's wages in an amount exceeding the maximum value allowed under New York Hospitality Industry Wage Order. 12 NYCRR §146-19.

116.    Defendants did not provide Plaintiff Xing Wang with a correct pay stub with every payment of wages.

117.    Defendants committed the following alleged acts knowingly, intentionally and willfully.

118.    Defendants did not compensate Plaintiffs for minimum wage or overtime compensation according to state and federal laws

119.    Plaintiffs were not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours.

120.    Defendants did not provide Plaintiffs with wage notices at the time of their hiring.

121.    The applicable minimum wage for the period of December 31, 2013 to December 31, 2014 is $8.00 per hour.

122.    The applicable minimum wage for the period of December 31, 2014 to December 31, 2015 is $8.75 per hour.

123.    The applicable minimum wage for the period of December 31, 2015 to December 31, 2016 is $9.00 per hour.

124.    The applicable minimum wage for the period of December 31, 2016 to present is $11.00 per hour for a New York City employer that has over 10 employees.

125.    Defendants knew that the nonpayment of overtime and the "spread of hours" premium would economically injure Plaintiffs and the Class Members by their violation of federal and state laws.

126.    During all relevant times, Defendants unlawfully withheld all Plaintiffs' tip income.

127.    While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

128.    Plaintiffs and the New York Class Members' workdays frequently lasted longer than 10 hours.

129.    Defendants did not provide Plaintiffs and other Class members with written notices about the terms and conditions of their employment upon hire in relation to their rate of pay, regular pay cycle and rate of overtime pay. These notices were similarly not provided upon Plaintiffs' and other Class members' pay increase(s).

130.    Defendants committed the foregoing acts against the Plaintiffs, the FLSA Collective Plaintiffs, and the Class.

## **COLLECTIVE ACTION ALLEGATIONS**

131.    Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA minimum wage or the New York State minimum wage to Plaintiffs or other similarly situated employees.

132.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

133.    Defendants knowingly and willfully operated their business with a policy of not paying the New York State "spread of hours" premium to Plaintiffs and other similarly situated employees.

134.    Plaintiffs bring this action individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants at their restaurant location for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom failed to receive minimum wages, spread-of-hours pay, overtime compensation for all hours worked in excess of forty (40) hours per week (the "Collective Action Members"), and have been subject to the same common decision, policy, and plan to not provide required wage notices at the time of hiring, in contravention to federal and state labor laws.

135.    Upon information and belief, the Collection Action Members are so numerous the joinder of all members is impracticable. The identity and precise number of such persons are

unknown, and the facts upon which the calculations of that number may be ascertained are presently within the sole control of the Defendants. Upon information and belief, there are more than forty (40) Collective Action members, who have worked for or have continued to work for the Defendants during the Collective Action Period, most of whom would not likely file individual suits because they fear retaliation, lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiffs submit that this case should be certified as a collection action under the FLSA, 29 U.S.C. §216(b).

136.    Plaintiffs will fairly and adequately protect the interests of the Collective Action Members, and have retained counsel that is experienced and competent in the field of employment law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

137.    This action should be certified as collective action because the prosecution of separate action by individual members of the collective action would risk creating either inconsistent or varying adjudication with respect to individual members of this class that would as a practical matter be dispositive of the interest of the other members not party to the adjudication, or subsequently impair or impede their ability to protect their interests.

138.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as collective action.

139.    Questions of law and fact common to members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the questions of fact common to Plaintiff and other Collective Action Members are:

a. Whether the Defendants employed Collective Action members within the meaning of the FLSA;

b. Whether the Defendants failed to pay the Collective Action Members the minimum wage in violation of the FLSA and the regulations promulgated thereunder;

c. Whether the Defendants failed to pay the Collective Action Members overtime wages for all hours worked above forty (40) each workweek in violation of the FLSA and the regulation promulgated thereunder;

d. Whether the Defendants failed to pay the Collective Action Members spread of hours payment for each day an employee worked over 10 hours;

e. Whether the Defendants failed to provide the Collective Action Members with a wage notice at the time of hiring as required by the NYLL;

f. Whether the Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

g. Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive, and statutory damages, interest, costs and disbursements and attorneys' fees.

140.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

141.    Plaintiffs and others similarly situated have been substantially damaged by Defendants' unlawful conduct.

## CLASS ACTION ALLEGATIONS

142.    Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("F. R. C. P.") Rule 23, on behalf of all non-exempt persons employed by Defendants at each of their three restaurant locations doing business as Szechuan Palace on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

143.    All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under said F.R.C.P 23.

144.    The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parities and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

145.    Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, and overtime compensation. Defendants' corporation wide policies and practices, including but not limited to

their failure to provide a wage notice at the time of hiring, affected all Class members similarly, and Defendants benefited from the same type of unfair and/ or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

146.    Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in representing Plaintiffs in both class action and wage and hour employment litigation cases.

147.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Class members lack the financial resources to vigorously prosecute corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. The losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, thus the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of

conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

148.    Upon information and belief, defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

149.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a. Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

b. Whether Defendants paid Plaintiffs and Class members the New York minimum wage for all hours worked;

c. Whether Plaintiffs and Class members are entitled to overtime under the New York Labor Law;

d. Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the NYLL;

e. Whether the Defendants provided wage notices at the time of hiring to Plaintiffs and class members as required by the NYLL;

g. At what common rate, or rates subject to common method of calculation were and are the Defendants required to pay the Class members for their work

## STATEMENT OF CLAIM

### COUNT I
### [Violations of the Fair Labor Standards Act—Minimum Wage
### Brought on behalf of the Plaintiff and the FLSA Collective]

150.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

151.    At all relevant times, upon information and belief, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. §§206(a) and §§207(a). Further, Plaintiff is covered within the meaning of FLSA, U.S.C. §§206(a) and 207(a).

152.    At all relevant times, Defendants employed "employees" including Plaintiffs, within the meaning of FLSA.

153.    Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

154.    The FLSA provides that any employer engaged in commerce shall pay employees the applicable minimum wage. 29 U.S.C. § 206(a).

155.    At all relevant times, Defendants had a policy and practice of refusing to pay  the statutory minimum wage to Plaintiffs, and the collective action members, for some or all of the hours they worked.

156.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. §206 shall be liable to the employees affected in the amount of their unpaid minimum compensation, and in an additional equal amount as liquidated damages.

157.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

**COUNT II**
**[Violation of New York Labor Law—Minimum Wage**
**Brought on behalf of Plaintiff and Rule 23 Class]**

158.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

159.    At all relevant times, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§2 and 651.

160.    Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

161.    Defendants knowingly and willfully violated Plaintiffs' and Class Members' rights by failing to pay them minimum wages in the lawful amount for hours worked.

**COUNT III**
**[Violations of the Fair Labor Standards Act—Overtime Wage**
**Brought on behalf of the Plaintiff and the FLSA Collective]**

162.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

163.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

164.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC §216(b).

165.    Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

166.    At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiff and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, et seq., including 29 U.S.C. §§207(a)(1) and 215(a).

167.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. §516.4.

168.    Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collectives' labor.

169.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

## COUNT IV
### [Violation of New York Labor Law—Overtime Pay
### Brought on behalf of Plaintiff and the Rule 23 Class]

170.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

171.    Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay proper overtime compensation shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

172.    Defendants' failure to pay Plaintiffs and the Rule 23 Class their overtime pay violated the NYLL.

173.    Defendants' failure to pay Plaintiffs and the Rule 23 Class was not in good faith.

## COUNT V
### [Violation of New York Labor Law—Spread of Time Pay
### Brought on behalf of Plaintiff and the Rule 23 Class]

174.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

175.    The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§190, et seq., and §§650, et seq., and New York State Department of Labor regulations §146-1.6.

176.    Defendants' failure to pay Plaintiffs and Rule 23 Class spread-of-hours pay was not in good faith.

### COUNT VI
### [Violation of New York Labor Law—Time of Hire Wage Notice Requirement]

91.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

92.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

93.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on his or her first day of employment.

94.    Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to each Plaintiffs even after the fact.

95.    Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT VII
### [Violation of New York Labor Law—New York Pay Stub Requirement]

96.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

97.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-1(d).

98.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiff' payday.

99.    Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law N.Y. Lab. Law §198(1-d).

## COUNT VIII
### [Violation of New York Labor Law - Gratuities Violations]

100.    Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

101.    New York Labor Law prohibits any deduction from wages, other than standard deductions for taxes, deductions required by law, and deductions for the benefit of the employee that have been expressly agreed upon in writing by the employee. N.Y.Lab.Law§193.

102.    New York Labor Law further prohibits an employer or his agent from demanding or accepting, "directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity or of any charge purported to be a gratuity for an employee." N.Y.Lab.Law§196-d.

## COUNT IX
### [Civil Damages for Deceptive Acts and Practices — Violations of New York General Business Law §349 Brought on Behalf of the Plaintiff]

103.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

104.    NY General Business Law §349 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

105.    Due to Defendants' violations of NY GBS Law §349, Plaintiff is entitled to recover from Defendants, jointly and severally, his actual damages or fifty dollars ($50), whichever is greater, or both such actions.

106.    Plaintiffs demand the right to examine, in person or by attorney, the minutes of the proceedings of shareholders and records of shareholders of Defendant Corporation to recover wages owed as employees of the corporation (See Exhibit 3)

### <u>Prayer For Relief</u>

WHEREFORE, Plaintiffs, on behalf of themselves, and the FLSA collective Plaintiff and rule 23 class, respectfully request that this court enter a judgment providing the following relief:

a)    Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the court issue such notice, to all persons who are presently, or have been employed by defendants as non-exempt tipped or non-tipped employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied proper hourly compensation and premium overtime wages;

b)    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of

Civil Procedure;

c)    Designation of Plaintiffs as representatives of the Rule 23 Class, and counsel of record as Class counsel;

d)    Certification of this case as a collective action pursuant to FLSA;

e)    Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and his counsel to represent the Collective Action Members;

f)    A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

g)    An injunction against Szechuan Palace, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

h)    An award of unpaid wages and minimum wages due Plaintiffs and the Collective Action members under the FLSA and New York Labor Law, plus compensatory and liquidated damages in the amount of twenty five percent under NYLL §§190 et seq., §§650 et seq., and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, and interest;

i)    An award of unpaid overtime wages due under FLSA and New York Labor Law;

j)    An award of unpaid "spread of hours" premium due under the New York Labor Law;

k)    An award of damages for Defendants' failure to provide wage notice at the time of hiring as required under the New York Labor Law.

l)    An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages, minimum wages and overtime compensation pursuant to 29 U.S.C. §216;

m)    An award of liquidated and/ or punitive damages as a result of Defendants' willful deduction of Plaintiffs' tips, failure to pay wages, minimum wages, overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

n)    An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

o)    The cost and disbursements of this action;

p)    An award of prejudgment and post-judgment fees;

q)    Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

r)    Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: Flushing, New York September 16, 2017   HANG & ASSOCIATES, PLLC.

                                              */S JIAN HANG*
                                              Jian Hang, Esq.
                                              136-18 39th Ave., Suite 1003
                                              Flushing, New York 11354
                                              Tel: 718.353.8588
                                              jhang@hanglaw.com
                                              *Attorneys for Plaintiffs*

# EXHIBIT 1

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Han Dynasty NYU Corp.., June Kwan, Han Ming Chiang and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

Di Jemy Suen
Full Legal Name (Print)

Signature

09/01/2017
Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Han Dynasty NYU Corp.., June Kwan, Han Ming Chiang and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

JUNYING MA

Full Legal Name (Print)

JUNYING MA

Signature

8/29/2017

Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Han Dynasty NYU Corp.., June
Kwan, Han Ming Chiang and/or related entities. I consent to be a plaintiff in an action to collect
unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the
named plaintiff in this case.

Full Legal Name (Print)

Signature

Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Han Dynasty NYU Corp.., June Kwan, Han Ming Chiang and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

My De huiv
Full Legal Name (Print)

My De huiv
Signature

8 / 29 / 2017
Date

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by Han Dynasty NYU Corp.., June Kwan, Han Ming Chiang and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

_wang Xin_

Full Legal Name (Print)

_wang Xing_

Signature

_9/11/2017_

Date

# EXHIBIT 2

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY**
**FOR SERVICES RENDERED**

TO:    JUNE KWAN

     PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Di Jewy Suen, De Hui Mu, Jun Ying Ma, Yan Nan Ma, Xing Wang and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of Han Dynasty NYU Corp. for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them for the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

     Dated: September 16, 2017

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY
FOR SERVICES RENDERED**

TO:    H E L E N   M   K W A N

PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Di Jewy Suen, De Hui Mu, Jun Ying Ma, Yan Nan Ma, Xing Wang and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of Han Dynasty NYU Corp. for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them for the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

Dated: September 16, 2017

47

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY
FOR SERVICES RENDERED**

TO:    Han Ming Chiang

      PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Di Jewy Suen, De Hui Mu, Jun Ying Ma, Yan Nan Ma, Xing Wang and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of Han Dynasty NYU Corp. for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them for the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.


      Dated: September 16, 2017

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY
FOR SERVICES RENDERED**

TO:    JUNE KWAN

PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Di Jewy Suen, De Hui Mu, Jun Ying Ma, Yan Nan Ma, Xing Wang and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of Han Dynasty Upper West Side Corp. for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them for the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.


Dated: September 16, 2017

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY
FOR SERVICES RENDERED**

TO:    H E L E N  M  K W A N

      PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Di Jewy Suen, De Hui Mu, Jun Ying Ma, Yan Nan Ma, Xing Wang and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of Han Dynasty Upper West Side Corp. for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them for the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

      Dated: September 16, 2017

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY**
**FOR SERVICES RENDERED**

TO:    MARK ALLEN

      PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Di Jewy Suen, De Hui Mu, Jun Ying Ma, Yan Nan Ma, Xing Wang and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of Han Dynasty Upper West Side Corp. for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them for the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.


      Dated: September 16, 2017

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY
FOR SERVICES RENDERED**

TO:    Han Ming Chiang

PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Di Jewy Suen, De Hui Mu, Jun Ying Ma, Yan Nan Ma, Xing Wang and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of Han Dynasty Upper West Side Corp. for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them for the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

Dated: September 16, 2017

# EXHIBIT 3

**DEMAND BY EMPLOYEES TO INSPECT SHARE RECORDS AND
MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE
BUSINESS CORPORATION LAW**

TO:    HAN DYNASTY NYU CORP. d/b/a HAN DYNASTY
       90 Third Avenue
       New York, New York 10003

PLEASE TAKE NOTICE, that Di Jewy Suen, De Hui Mu, Jun Ying Ma, Yan Nan Ma, Xing Wang and others similarly situated as employees of the above corporations who intend to demand, pursuant to the provisions of Section 630 of the Business Corporation Law of New York, payment of debts, wages and/or salaries due and owing to them as laborers, servants and/or employees of the above corporations for services performed by them for the above corporations within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporations, and who have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and records of shareholders of the above corporations and to make extracts therefrom on or after five (5) days from receipt of this notice.

Dated: September 16, 2017

**DEMAND BY EMPLOYEES TO INSPECT SHARE RECORDS AND
MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE
BUSINESS CORPORATION LAW**

TO:    HAN DYNASTY UPPER WEST SIDE CORP. d/b/a HAN DYNASTY
2350 Broadway a/k/a 215 W 85th Street
New York, New York 10024

PLEASE TAKE NOTICE, that Jun Ying Ma and others similarly situated as employees of the above corporations who intend to demand, pursuant to the provisions of Section 630 of the Business Corporation Law of New York, payment of debts, wages and/or salaries due and owing to them as laborers, servants and/or employees of the above corporations for services performed by them for the above corporations within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporations, and who have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and records of shareholders of the above corporations and to make extracts therefrom on or after five (5) days from receipt of this notice.

Dated: September 16, 2017