# HANG & ASSOCIATES, PLLC
ATTORNEYS AT LAW
136-20 38th Avenue, Suite 10G
Flushing, New York 11354

July 11, 2018

Keli Liu, Esq.
Tel : (718) 353-8588
Fax: (718) 353-6288
Email: Kliu@hanglaw.com

**VIA ECF**
Hon. Analisa Torres
United States District Judge
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

                Re:    **Mu et al v. Han Dynasty NYU Corp. et al**
                      Case No. 1:17-cv-07065-AT
                      Motion for Settlement Approval

Dear Judge Torres:

      We are Counsel for Plaintiffs De Hui Mu, Jun Ying Ma, Yan Nan Ma, Di Jemy Suen, Xing Wang a/k/a Xiao Yi Xie, Adrian Diaz, Augusto Agustin, Alejandro Aguilar, Luis Guallpa, Jose Gonzalez Faustino and Adam Lopez ("Plaintiffs" collectively). We write, jointly with Defendants Han Dynasty NYU Corp. d/b/a Han Dynasty, Han Dynasty Upper West Side Corp. d/b/a Han Dynasty, June Kwan, Mark Allan, Helen M. Kwan, and Han Ming Chiang (the "Defendants" collectively) (all, together where appropriate, as "the Parties"),to explain the terms of the Parties' settlement with respect to Plaintiffs' FLSA claims, and to seek approval of their settlement of those claims in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).[1]. A copy of the signed settlement agreement is annexed herein as **Exhibit A**.

## Procedural History and Settlement Amount

      Both parties believe that the settlement amount is fair and reasonable. This action was originally filed on September 17, 2017 by Plaintiffs De Hui Mu, Jun Ying Ma, Yan Nan Ma, Di Jemy Suen, Xing Wang a/k/a Xiao Yi Xie, for, *inter alia*, minimum wage, overtime compensation, and gratuities violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201 et seq., and the New York Labor Law ("NYLL"). Plaintiffs Adrian Diaz, Augusto Agustin, Alejandro Aguilar,

---

[1] While Plaintiffs also bring claims in this case for Defendants' alleged violations of the New York Labor Law ("NYLL"), settlement of those claims does not require court approval for dismissal. *See, e.g., Yunda v. SAFI-G, Inc.*, 2017 WL 1608898, at *1 (S.D.N.Y. Apr. 28, 2017) (citing *Abrar v. 7-Eleven, Inc.*, 2016 WL 1465360, at 81 (E.D.N.Y. Apr. 14, 2016) (" . . . the NYLL settlement agreement does not require judicial approval.")

1

Luis Guallpa, Jose Gonzalez Faustino and Adam Lopez subsequently joined the action as opt-in Plaintiffs.

The corporate defendants operate Chinese restaurants in New York City. This lawsuit was filed against Han Dynasty's locations in the East Village and Upper West Side. While a few of the Plaintiffs worked briefly at Han Dynasty's Upper West Side location, Plaintiffs' claims were otherwise overwhelmingly focused on Han Dynasty's East Village location. Plaintiffs specifically allege they and all others similarly situated were entitled to unpaid minimum wage and overtime compensation under the FLSA and NYLL. Plaintiffs also brought claims under the NYLL for misappropriation of tips, failure to provide "spread-of-hours" pay, meal credit violations, and failure to provide wage statements and notices advising Plaintiffs of their pay rate/tip credit.

The eleven (11) Plaintiffs allege that they were former dishwashers, busboys, bartenders, food runners and/or waiters at Han Dynasty's East Village and/or Upper West Side locations. Plaintiffs' collective employment periods spanned from in or around August 2013 to in or around July 2018. Plaintiffs maintained that they regularly worked overtime but were not properly compensated. Plaintiffs allege that Defendants did not maintain proper time records and failed to properly pay them for all hours worked. Plaintiffs who worked the tipped positions further allege that Defendants illegally deducted 50% of their cash tips, failed to keep accurate tip records, and maintained an illegal tip pool by including tip-ineligible employees such as those who work in the kitchen. As such, Plaintiffs maintain that Defendants were not eligible to claim the tip credit and therefore were obligated to adopt the relevant regular minimal wage.

If Plaintiffs were to prevail on all their wage claims, excluding gratuities and WTPA violations, would total approximately $208,999.30. If Plaintiffs prevails on all of their gratuity violations, an estimate of $ 76,797.50 would added on and brings the total, exclusive of liquidated damage and notice violations, to $285,796.8.

Defendants denied all of the allegations asserted against them in the Complaint and asserted various affirmative defenses in their Answer. During this 10-month litigation, Defendants argued, among other things, that: (1) Plaintiffs' overtime claims were grossly exaggerated and readily refuted by Han Dynasty's daily and weekly time records; (2) Plaintiffs had no cognizable minimum wage claims for any non-exempt, tipped front-of-the-house employees (e.g., servers and runners/bussers) because all of these tipped employees were properly paid at least the statutory hourly minimum wage (through payment of the hourly cash wage taken together with the tip credit which satisfied the remaining amount of the minimum wage). Han Dynasty also maintained records of cash and credit card tips received during the respective pay period to establish that such employees were paid significantly above the minimum wage for that pay period; (3) Plaintiffs had actual and written notice of Han Dynasty's use of the tip credit through their work at the restaurant; (4) Plaintiffs were not entitled to recover "tip credit" damages for tip misappropriation claims brought pursuant to the NYLL § 196-d[2]; (5) Han Dynasty employed a valid tip pooling practice

---

[2] The law is well-established by multiple district courts in the Second Circuit that an employer's purported violation of Section 196-d does not entitle employees to recover tip credits as damages, unless the unlawful misappropriation of gratuities resulted in the employees receiving less than the general minimum hourly wage. *See Murphy v. Lajunie*, 2016 WL 1192689, at *5–*6 (S.D.N.Y. Mar. 21, 2016) ("while the FLSA expressly prohibits employers who unlawfully retain tips from availing themselves of the tip credit, NYLL lack[ed] similar language" and, thus,

2

compliant with the FLSA and NYLL; and (6) Han Dynasty provided compliant pay rate notices and wage statements to Plaintiffs.

In this litigation, Defendants produced over a thousand pages of time and payroll records, including, but not limited to, daily and weekly time records, payroll records, pay stubs, tip records, company handbook policies, arbitration agreements, pay rate records, etc. Furthermore, Defendants took the depositions of two-named Plaintiffs and one opt-in Plaintiff. The depositions of these Plaintiffs revealed, among other things, that: (1) Plaintiffs did not regularly work overtime, including one plaintiff who testified that he only worked overtime on a "handful" of occasions during several years of his employment; (2) Plaintiffs who worked in tipped positions were either informed by Defendants or aware through their work at the restaurant that they were paid a lower cash wage (representing the tipped-minimum wage as opposed to full statutory minimum wage); (3) some Plaintiffs, who were employed as servers, regularly earned over $25/hour (and some plaintiffs earned up to as much as $34/hour) based on Han Dynasty's payroll and tip records; and (4) some Plaintiffs did not work shifts that exceeded 10 hours in a given workday and, thus, did not have any cognizable spread-of-hours claims against the Defendants. The Parties agreed that the remaining depositions of the Plaintiffs would have likely revealed similar testimonies, which could have further undermined their claims.

If Defendants were to prevail on all of their defenses, the amount of unpaid wages would have been minimal as compared to Plaintiffs' purported damages calculations. Morever, Plaintiff's claims for illegal retention of gratuities would have been rejected altogether. . Significantly, if the case were to proceed to trial, Defendants believe they would have been able to demonstrate via documentary evidence and witness testimony that Plaintiffs were properly paid all wages due.

While the Parties were conducting depositions and producing documents in the course of discovery, the Parties were also already engaged in heavy motion practice. On May 15, 2018, Defendants moved to compel the individual arbitrations of opt-in Plaintiffs Adrian Diaz and Luis Gullapa. *See* ECF Docket No. 38. Defendants' motion was filed after Plaintiffs' Counsel had agreed to the individual arbitrations of Named Plaintiffs Jun Ying Ma and Yan Nan Ma. *See* ECF Docket No. 35. On May 18, 2018, Plaintiffs filed their conditional certification motion. *See* ECF Docket No. 42. Prior to the deadline for the Parties to submit their respective oppositions to such motions, the Parties reached a settlement in principle to resolve all of the claims in this action.

Thus, given this heavily contested litigation, which included the production of thousands of pages of document discovery, pending motions to compel individual arbitration or conditional certification, and the numerous depositions taken and scheduled, the Parties believe that the settlement is both fair and reasonable. For these eleven (11) plaintiffs, the gross settlement amount is $325,000.00, inclusive of Plaintiffs' counsel's attorneys' fees and costs. The settlement amount allotted to the Plaintiffs is $213,600.00, which is more than $208,999.30 which is the total back wage allegedly owned to these eleven plaintiffs.

---

"a violation of Section 196-d does not entitle plaintiffs to the windfall of the tip credit."); *Schear v. Food Scope Am. Inc*., 297 F.R.D. 114, 133 (S.D.N.Y. 2014) (finding, pursuant to statute's plain language and NYDOL guidance, that the NYLL "does not prohibit employers" who violate Section 196-d "from availing themselves of a tip credit," unless the unlawful tip retention resulted in employees receiving less than the general minimum hourly wage).

3

Settlement payments to the individual Plaintiffs are proportional to their respective periods of employment, position, individualized damages, and the overall strength of their individual claims. This settlement amount reflects a reasonable compromise between the parties' dispute over Defendants' alleged minimum wage and overtime claims as well as gratuities' violation.  More importantly, this amount considers the costs and the uncertainty of protracted litigation. This settlement was reached after extensive negotiations between the parties' attorneys, including a full-day private mediation session with a well-regarded labor and employment law mediator, Ms. Ruth Raisfield.  After the parties completed numerous depositions and started motion practice, the Parties, through their respective counsel, met again in-person and were able to reach an agreement to settle this case in principle.  We believe this to be a fair resolution of this matter, due to certain *bona fide* disputes about the value of Plaintiffs' claims and the risks attendant with continuing the litigation.

Moreover, Plaintiffs were incentivized to settle because Defendants are willing to pay the settlement sum in seven installments.  *See* Exhibit A, Settlement Agreement, Ex. 1  Should Plaintiffs insist on further litigating this matter, the value of their damages would decrease not only due to ordinary litigation risks, but also simply with the passage of time, and the likelihood that any recovery would only be paid out over a significant longer time period. By settling now, Plaintiffs ensure that they will get much of what they could potentially recover upfront, and they do so without having to wait through months of likely fruitless discovery, then having to face the possibility that their claims may be undermined at trial.

## Attorney's Fees

The settlement agreement also provides for reasonable attorneys' fees.  Pursuant to our firm's agreement with the Plaintiffs, the firm will be reimbursed $5,100.00 including $3,000.00 of mediation fees, $400 of filing fees, $786.13 of process of services fees, $851.50 of depositions costs and $62.37 of travel and other costs. The firm will then retain 1/3 of the remaining settlement amount as attorneys' fees, which is $106,300.00.  Based on my experience in handling FLSA and NYLL matters, this is a standard and acceptable arrangement for attorneys' fees.

Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit.  *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013).  This case is distinguishable from the case cited in *Cheeks*, wherein that settlement agreement was denied because the attorneys' fees were set at between 40 and 43.6 percent of the total payment, without justification to support the higher fees.  *Cheeks v. Freeport Pancake House, Inc.*, 796 F3d 199, 206 (2d Cir 2015) (*citing Lopez v Nights of Cabiria, LLC*, 96 F Supp 3d 170, 181-82 (SDNY 2015).  Therefore, as 1/3 is standard practice in FLSA claims, it is a fair number for this matter as well.

For these eleven (11) plaintiffs, the gross settlement amount is $325,000.00, inclusive of Plaintiffs' counsel's attorneys' fees and costs.  The settlement amount allotted to the Plaintiffs is $213,600.00 while Plaintiffs' attorneys' fees and costs were $111,400.00.  *See* attached Affirmation/Affidavit of Jian Hang regarding fees and costs as **Exhibit B**.  All of time billed was reasonably necessary to secure the results we have achieved for our client thus far.  Hang & Associates, PLLC ("Hang & Associates") represents both plaintiffs and defendants in litigating

claims arising out of the employment relationship, including claims for employment discrimination, wage and hour issues, and contact disputes. While the majority of Hang & Associates' plaintiff-side work is contingency based, Hang & Associates typically calculates its attorney fees based on its hourly rate. Hang & Associates spent approximately 231 hours on this matter, and had it been billing hourly, it would have incurred $76.167 in fees and $5,100 in costs for a total of $81,267. The number of attorney hours represented in the attorney worksheet is reasonable and represents hours that were necessarily expended on this litigation.

## FLSA Settlement Approval

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted). In evaluating the fairness of a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012). The *Wolinsky* factors consider: : "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In addition, given the purposes of the FLSA, factors that weigh against approving a settlement also include the following: (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstance will recur"; (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Id*. at 336. (Citations omitted.)

Ultimately, the settlement must reflect a fair and reasonable compromise of disputed issues with the principal question being "whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366, (S.D.N.Y. 2013)) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, at *16 (S.D.N.Y. Sept. 23, 2014) (citations omitted). Applying these factors, Plaintiffs suggest that they weigh strongly in favor of settlement approval.

In light of the uncertainties associated with establishing liability, as well as Plaintiffs' desire to avoid future legal proceedings, the settlement amount reached here is reasonable. *See Beckert v. Ronirubinov,* 2015 U.S. Dist. LEXIS 167052, at *4 (S.D.N.Y. Dec. 14, 2015) (holding that a settlement of approximately 25% of the amount initially sought was a "substantial proportion of the maximum possible recovery" and fair, especially in light of the risks associated with litigation). The settlement will also enable the parties to avoid the burdens and expenses of trial, as well as the litigation risks that always accompany same.

Courts consider settlements fair and reasonable when, as is the case here, they consider the

potential risks of litigation. *See e.g.*, *Martinez v. Hilton Hotels Corp.*, 2013 U.S. Dist. LEXIS 117738, at *9 (S.D.N.Y. Aug. 20, 2013) (Court found settlement reasonable because, *inter alia*, it was a "compromise over contested issues" "in light of the unpredictability of the outcome at trial"); *Garcia v. BAE Cleaners Inc.*, 2012 U.S. Dist. LEXIS 51867, at *2 (S.D.N.Y. April 12, 2012) (Court held the settlement fair and reasonable even though the settlement amount was less than the potential liquidated damages awardable under the FLSA because it "reflect[ed] a reasonable compromise over" issues that had been "contested in the litigation"). Accordingly, this factor supports approving the Settlement Agreement as fair and reasonable.

Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable. *Lliguichuzhca*, 948 F. Supp. 2d at 366; *Zeltser*, 2014 U.S. Dist. LEXIS 135635, at *17 (finding an FLSA settlement reasonable where, as here, it was the result of arm's-length negotiations and "Plaintiffs and Defendants were represented by counsel experienced in wage and hour law."). In this case, counsel for both parties are experienced litigators who focus their practices primarily on employment law issues. Plaintiffs exchanged multiple demands and offers of settlement with Defendants before settling on the terms of this proposed settlement. Moreover, prior to entering into the settlement agreement, Plaintiffs thoroughly considered the risks and benefits of continuing the litigation. The Settlement Agreement reflects the conclusion on the part of experienced counsel for all parties that the terms were a fair and reasonable assessment of their respective risks.

Furthermore, the settlement agreement does not contain any terms that would militate against the Court approving it. *See* Exhibit A. For instance, Plaintiffs' release in the Settlement Agreement is limited to any wage and hour claims that Plaintiffs have or may have against any of the originally-named Defendants, and thus does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See Ezpino v. CDL Underground Specialists, Inc.*, 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017) (*citing Cheeks*, 796 F.3d at 206); *Gonzalez v. Lovin Oven Catering of Suffolk, Inc.*, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (citing Cheeks, 796 F.3d at 206); *Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015); Lopez v. Nights of Cabiria, LLC, 2015 WL 1455689, at *6-7 (S.D.N.Y. March 30, 2015). Likewise, the agreement does not contain a confidentiality or non-disparagement clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood*, 2015 WL 4111668, at *1 (*citing Lopez*, 2015 WL 1455689, at *5); *also compare Ezpino*, 2017 WL 3037483, at *2-3 (*citing Cheeks*, 796 F.3d at 206) (approving settlement agreement where it did not "contain a confidentiality provision nor does it contain a non-disparagement clause"); *with Gonzalez*, 2015 WL 6550560, at *3 (*citing Cheeks*, 796 F.3d at 206) (declining to approve FLSA settlement containing a confidentiality provision).

Other factors present do not weigh against a settlement. This matter has not been conditionally certified as a collective action; thus, the settlement of this action will have no impact on any other employees or their rights. Plaintiffs are no longer employed by Defendants so there is no likelihood that Plaintiffs' circumstances will recur. Additionally, this case presents no novel questions of law that would benefit from extensive litigation.

Counsel for Plaintiffs and Defendants respectfully submit that the Settlement Agreement is fair and reasonable, and therefore jointly request that the Court approve or so order the Settlement Agreement.

Respectfully submitted,

*/s/* _____
Jian Hang, Esq.